We move to United States v. Roman May it please the Court, Counsel. Good morning, Your Honors. My name is Tracy Harkins and I represent Mr. Hector Roman, pursuant to Illinois Supreme Court Rule 711, under the supervision of Attorney Richard S. Kling, who is present here in court today. In the evening hours of October 18, 2012, Mr. Hector Roman, a lifelong Chicago resident with no criminal background, was stopped in his vehicle by the Chicago Police Department. The CPD was acting under the direction of the Drug Enforcement Agency. After halting Mr. Roman's vehicle, law enforcement subjected Mr. Roman to an illegal search in violation of the Fourth Amendment. Mr. Roman's Fourth Amendment rights were violated for three reasons. First, there was not reasonable suspicion because there was not sufficient articulable facts to support that suspicion. Second, there was no basis under the collective knowledge doctrine through which the officers directing the investigation could have conferred an appropriate suspicion for the stop of Mr. Roman. Finally, any consent that was given was legally invalid. Turning to my first point, the government in this case is asking you to take a reasonable concept of reasonable suspicion and broaden it to a point that would be constitutionally impermissible. As Your Honors are aware, reasonable suspicion is based on clear articulable facts that did not exist in this case, which turns me to my second point of collective knowledge. The collective knowledge doctrine may confer reasonable suspicion or probable cause. However, even in considering the imputed knowledge of the officers in the instant case, neither reasonable suspicion nor probable cause could have been established because mere presence is not sufficient to establish that a person is committing a crime or is about to commit a crime. All of the agents had, in terms of information in this investigation, was that Mr. Roman's vehicle was spotted near two areas that were being surveilled as a part of a drug investigation. That's it. Well, there's a little bit more than that. This car was the one that had been identified as the one used by the drug supplier, right? No, Your Honor, that's not the case. The car was first spotted that was being operated by Mr. Roman that day for the first time while DEA agents surveilled the target of the existing investigation, Mr. Miguel Lara, an eventual co-defendant of Mr. Roman. He went to his sister's home and was in contact with a confidential source who was setting up a drug buy. Mr. Roman's vehicle was spotted near the area of the drug buy, and Mr. Roman and two individuals were seen entering the home that Mr. Lara was present in. Now, it should be noted, as noted in the record, that that was a multi-residence unit, so there was no way for the agents to know whether or not Mr. Roman entered the same residence as Mr. Lara had entered. They left a short time later, at no point carrying anything with them in or out of that residence, and left. A short time later, within a few hours, the drug investigation shifted gears and started surveilling the residence of Mr. Lara. At that point, Mr. Roman's vehicle was spotted again. However, up until that point, it had only been noted that Mr. Roman's vehicle was in the area of Mr. Lara's sister's home. It was not necessarily noted that he was under suspicion. There was no attempt, there's nothing in the record to suggest that there was any attempt to identify the vehicle, to identify who was driving the vehicle. In fact, as reflected in the record, the agents only knew at that point, at the point of his sister's house, that there were three unknown Hispanic people in the area. Which relates to collective knowledge, because what happened here is that the Drug Enforcement Agency ended up instructing the Chicago Police Department to stop Mr. Roman, and eventually that led to the uncovering of the evidence that was motioned to suppress at the district court. Now, in looking at the case, you know... But you've omitted that this was a pre-arranged drug transaction. I'm sorry, Your Honor? You have omitted a key fact here, which is that this was a pre-arranged drug transaction. They're not just conducting random surveillance, and this car shows up. This is in the context of a drug transaction that's been arranged through a confidential informant. It's true, Your Honor, that there was an existing drug investigation, and that the target of the transaction, all of this surveillance, is in the context of a specific pre-arranged transaction, and so your client has shown up in this Honda Pilot just at the right moment. So, it seems to me that's enough collective knowledge, combined with the greater context that the drug sale was in the process of being aborted, that they had to pull him over. Your Honor, if I may ask... To check for the unsold heroin. Your Honor, if I may answer your question by discussing United States v. Williams, because the moving parts of Williams and the instant case, they are similar. There's an existing drug investigation. They know that there are drug sales being conducted. In the instant case, the officers knew that they were waiting on a quantity of heroin that their CS had arranged to buy. They did know that, and they did know that a third party would be bringing it. However, the facts, the determinative facts of Williams differ markedly from the instant case. In Williams, there's an individual who's being surveilled, much like Mr. Lahr was being surveilled here, and a third party came into the picture of that investigation, and in that investigation, agents had knowledge that there was drug transactions going on. Now, in Williams, they saw that individual who came into the picture go in and out of the house. They also saw him carrying a shoebox in and out of the house. Now, on the collective knowledge and imputed knowledge of those officers seeing the box, seeing him go in and out, and knowing that a drug transaction was going to occur, that certainly was enough to establish probable cause in that case. But here, in the instant case, nothing's ever seen being brought in and out of the house by Mr. Roman or anyone that he's with, with the exception of a small-sized purse. He's only seen in the area of the garage that is attached to the known drug house. None of the agents that were surveilling the area were able to confirm that they ever saw Mr. Roman enter Mr. Lahr's residence, nor his sister's. Now, in Williams, there was one car outside of the investigation that came into the picture and two people. In the instant case, there's several more people. There's three vehicles, and the stop occurred of each of those vehicles under the guise that drugs may be found. Now, Mr. Roman's vehicle was one of those cars that was instructed to be stopped on that basis, on the basis that there was suspicion for drugs. However, they stopped Mr. Lahr earlier in the day, a third car, and they didn't find drugs. And my point, Your Honor... Well, right. The assumption is that, okay, they didn't find him in that car, so they must be in the other car. Yes, Your Honor. These are the two cars involved in the transaction. Yes, Your Honor. And on the basis of reasonable suspicion, which requires more than a mere hunch, deciding that two cars may have drugs in them and instructing the Chicago Police Department to follow them and stop them on that basis is not constitutionally permissible. In the context of an arranged drug transaction? Yes, Your Honor. How is that not constitutionally permissible? Your Honor, the district... They pre-arranged this transaction. These are the two cars that show up at the appointed place. There's a sighting of folks going in and out of the sister's house and this particular car, the Honda Pilot, not the black Durango, with that purse. So they've got plenty of reasonable suspicion to stop both cars. Your Honor, the district court did make a finding of reasonable suspicion, and that this was a Terry stop. However, the facts here do not rise to the level necessary for articulable suspicion. If you don't have any more questions at this time, I'd like to reserve the remainder of my time for rebuttal. Thank you, Counsel. May it please the Court, my name is Erica Sicila, and I represent the United States. The district court here did not err in denying the defendant's motion to suppress. The district court denied the motion after an extensive evidentiary hearing, at which the court heard testimony from five law enforcement officers, as well as the defendant himself, and was presented with additional evidence, including recorded phone calls and documents. The district court based its findings and conclusions on the evidence heard during the suppression hearings, and those findings and conclusions should not be disturbed on appeal. First, the district court correctly found that because of law enforcement's collective knowledge, the Terry stop of the defendant's vehicle was justified. DEA agents were in communication with one another on October 18th, both in person and over the radio. And as the district court found, the phone calls clearly showed that a drug deal was being planned. Not only did those phone calls refer to specific elements of the drug deal, like the drug price, but they also showed that Mr. Roman's co-defendant, Miguel Lara, was expecting the drugs to be delivered by a third party, and that third party ended up being Mr. Roman himself. The phone calls that were recorded led to surveillance, which in turn led to law enforcement identifying the defendant's vehicle as being suspected of being involved in the drug deals. Law enforcement observed the vehicle at both the Byron residence and the Karlov residence. And all of these facts, among others presented at the hearing, at minimum, arose to the level of reasonable suspicion, which justified the stop. Moreover, the district court was correct in finding that the traffic violation provided independent probable cause to stop the defendant's vehicle. Two CPD officers testified at the suppression hearing that they observed and heard the defendant, excuse me, they observed the defendant roll through or go through a stop sign without fully stopping. Right, that's a little sketchy, though, because there's no stop sign at that location? There is a stop sign at the location where the actual violation occurred. There was some confusion, and it's, I'm sure, confusing to read. The traffic officers wrote a ticket after the stop occurred, and the address that was provided was the incorrect address. At the incorrect address location, the officers testified at the hearing that they were not familiar with the location of the traffic stop. They worked in another area of the city regularly. There was no traffic sign at the location on the ticket, but where the stop occurred, there was a traffic stop sign, and the defendant, that was the sign that the and the district court was correct in crediting the officer's testimony over the defendant's, which, as the district court noted on the record, was at times hard to believe. The defendant's testimony was difficult to believe. Finally, the consent of, the defendant did provide consent to search the vehicle once it was stopped, and that consent was provided voluntarily. Again, the district court credited these two CPD officers' testimony regarding the defendant's providing consent, and in addition, the district court heard testimony from a task force officer, Christine McGuire, who arrived on the scene after the stop and arrived in time to hear the defendant provide consent. She also documented that consent the following, I believe it was the following day, but shortly after the stop, in an email to one of her colleagues, describing the events that occurred from her perspective at the motion to suppress, and unless the court has any further questions, I would just end by asking you to affirm the defendant's conviction and sentence. Thank you. Thank you. How much time? You have two minutes. Thank you, Your Honor. First, I'd like to address the government is incorrectly asserting that the district court found probable cause to stop Mr. Roman's vehicle on the basis of a traffic violation. The district court judge never made that finding. Additionally, the government is incorrectly asserting that the district court judge found credibility of all of the police officers. That is not the case. The district court did credit the testimony of Ms. McGuire. However, he did not explicitly credit the testimony of officers Rodriguez or Perez, and in fact, Ms. McGuire did not even see the traffic violation itself. She heard over the radio that this traffic violation had allegedly occurred. However, she did not see it. So the two officers... Wasn't the consent given after she showed up? Yes, Your Honor. The consent was given. However, even if the consent was given, it wouldn't matter because they didn't have probable cause to stop him. And additionally, the issue of probable cause is not properly before this court. The only issue that was decided by the district court was that there was reasonable suspicion to stop Mr. Roman, not that there was probable cause. And for those reasons, I ask you to remand to the district court for a different finding. Thank you. Thank you and your school for permitting you to participate, and thanks to your sponsor too. Thank you very much.